## JONATHAN HARTWELL *et al. versus* The Inhabitants of LITTLETON.

One who was formerly a town clerk, but is no longer in the office, cannot amend a town record made by him when town clerk.

Under the clause in *St. 1826, c.* 143, that " the school committee of each town shall procure class-books, at the expense of the town, and to be paid for out of the town treasury," the committee may either get the books on the credit of the town, or may buy them themselves and thereby make themselves creditors of the town.

The requisition of the statute, that the school committee shall give notice of the place or places where such books may be obtained, is substantially complied with, if the books are placed in the hands of the schoolmasters, with notice to the schools that they may be obtained of the masters.

Where the record of the annual meeting of a town for the choice of town officers, stated the election of a prudential committee, and then of an " *examining* committee," of five persons, and no other committee chosen was designated or described as a *school* committee, it was *held*, that the terms *examining committee* were sufficient to denote the school committee.

ASSUMPSIT for money had and received, and money paid ; also on an order drawn by the selectmen of Littleton upon the treasurer of the town, in favor of the inspecting school committee, for $ 34·11. Plea, the general issue.

Upon the trial in the Court of Common Pleas, at September term 1832, before *Williams* J., the plaintiffs produced in evidence the records of the town of Littleton, containing in the record of the election of town officers at the March meeting in 1830, the words " Prudential school committee " &c, (naming six persons.) " Examining *or inspecting* school committee. Voted the committee consist of five. Chose *by ballot* " &c., naming five persons, who were the plaintiffs in this action. The words *or inspecting school* and *by ballot,* were not originally in the record, but were inserted in court, during the trial, by the person who was the town clerk at the March meeting in 1830, but was not the town clerk at the time of the trial.

The plaintiffs also read in evidence the order of the selectmen upon the town treasurer, dated May 20, 1830, to pay " to the inspecting school committee or order the sum of $ 34·11, for books purchased for the schools in the town of Littleton." It was admitted by the defendants, that the order was duly presented to the town treasurer, and that he refused

to pay it; but it did not appear that the plaintiffs gave the selectmen notice of the non-payment.

The plaintiffs were chosen as "an examining committee" at the March meeting in 1829, and, during the years 1829 and 1830, in that character, examined and approved the instructors and visited and examined the schools.

In the winter of 1829 and 1830, the plaintiffs purchased and paid for a number of books of different kinds, for 'the purpose of introducing them into the several schools in the town, as class-books; and it was admitted that the books were suitable and proper for that purpose. A part of the books were deposited with the chairman of the committee, and the residue were from time to time placed by the committee in the hands of the several instructers, to be delivered to the scholars as they should need them. The committee directed the instructers, in the presence of the schools, to state to the scholars to whom books should be so delivered, the prices of the books, and to receive the money for those for which payment might be made, and account to the committee therefor; and to return to the committee a list of the names of those who had received books without making payment, and the prices of such books respectively; all which was done accordingly. Testimony was offered, that in several of the schools the scholars were expressly informed, that they might either keep the books so delivered to them by the instructers, or procure them of the chairman of the committee, or elsewhere, at their option.

In the course of the years 1829 and 1830, the plaintiffs purchased books for the use of the schools to the amount of $52·12, and, at the date of the order, had received for books delivered as above mentioned and paid for, $18·01, leaving a balance of $34·11 unpaid. The books were delivered and charged at the wholesale prices.

At a town meeting held in May 1831, the plaintiffs made a written report of their proceedings, which, with the vote of the town not to accept the report nor pay the order, was offered in evidence by the defendants.

The plaintiffs gave notice in writing, to the assessors, of the names of the scholars supplied by them with books, of the books so furnished, the prices of the same, and the names of

the parents, masters or guardians who ought to have supplied the same ; and the amount was thereupon added to the next annual tax of the parent, master or guardian respectively, and committed to the collector for collection, and a portion of it was collected and paid into the town treasury.

It did not appear that the plaintiffs gave any public notice, otherwise than as before stated, of their determination that the books should be used in the schools, or of the places where, or the terms upon which they might be obtained.

It was agreed, that upon the foregoing facts the Court of Common Pleas might enter a judgment upon nonsuit or default, each party reserving liberty to file exceptions ; and *Williams* J., being of opinion that the plaintiffs were entitled to recover, ordered a default to be entered. To this opinion and order the defendants excepted.

*H. H. Fuller* and *Keyes*, in support of the exceptions, argued that the town records could not legally be amended by a person, who was the town clerk at the time of the original entry, but had ceased to be such at the time when the amendment was made ; *Wells* v. *Battelle*, 11 Mass. R. 477 ; *Taylor* v. *Henry*, 2 Pick. 401 ; that the records, without the alteration, do not show that the plaintiffs were elected a school committee, nor, if *examining* committee should be construed to mean *school* committee, that their election was by ballot, and consequently their acts were not binding on the town ; that the *St.* 1826, *c.* 143, § 7, does not intend that the school committee shall themselves maintain an action against the town, but only authorizes them, as agents, to render the town liable to a third party by whom the books may be furnished ; and that the plaintiffs did not, as required by the statute, direct what class-books should be used in the schools, nor give due notice of the place or places where the books might be obtained. *Gilmore* v. *Pope*, 5 Mass. R. 493 ; *Taunton &c. Turnpike Corp.* v. *Whiting*, 10 Mass. R. 336 ; *Dawes* v. *Jackson*, 9 Mass. R. 492 ; *Nelson* v. *Milford*, 7 Pick. 18 ; *Brown* v. *Austin*, 1 Mass. R. 208.

*Hoar* and *Farley*, for the plaintiffs, cited to the point, that the order drawn by the selectmen was conclusive upon the town as a liquidation of the plaintiffs' claim, if not impeached by

*Hartwell*
*v.*
*Littleton.*

*Jan. 16th,*
*at Boston.*

Hartwell
*v.*
Littleton.

*April term
1833,
at Concord.*

showing fraud or mistake, *Belfast* v. *Leominster,* 1 Pick. 123 ; *Varner* v. *Nobleborough,* 2 Greenl. 121.

SHAW C. J. drew up the opinion of the Court. The first question is, whether the town clerk of a former year, who does not now hold that office, can be allowed to come in and amend the record of a former year made whilst he was in that office ; and the Court are of opinion that he cannot. It has been held, in *Welles* v. *Battelle,* 11 Mass. R. 477, that when a clerk continues in office several years, by repeated annual election, he may amend the record of a former year, notwithstanding an election has intervened, and though he does not hold the office under the same appointment. But we think there is an obvious distinction in principle, between the two cases. In the latter, the clerk not only knows the fact, in relation to which the amendment is to be made, which is a circumstance common to both, but he still enjoys the confidence of the town, is by their vote entrusted with the custody of their records, and is held responsible for their purity and correctness under the sanction of his official oath, and all such other guards as the law has thought it necessary to prescribe, in the case of a clerk actually in office. The intervening election is substantially a continuance of the clerk in the same office.

The next question turns upon the construction of the statute for regulating schools ; *St.* 1826, *c.* 143, § 7. It provides that the school committee shall determine what class-books shall be used, and shall procure, at the expense of the town and to be paid for out of the town treasury, a sufficient supply of such class-books &c. It has been contended in behalf of the defendants, that under this clause, a committee are only authorized to make a contract with some third person, for the purchase of books, on the credit of the town, and that they cannot purchase the books with their own money and charge them to the town, so as to make themselves the creditors. But we can perceive nothing in the terms or the spirit of the statute, which requires this limited construction. The words " procure at the expense of the town," are broad enough to cover both modes of obtaining books. In the present case, it appears that the books were delivered to the scholars at the wholesale prices. In many cases it would be more convenient

and more economical for the committee to purchase the books Hartwell *v.* Littleton. and pay for them, than to get them on credit, and the restraint upon the power of the committee in this respect, contended for by the defendants, would be prejudicial to towns. The salutary rule of law and equity, that an agent to purchase cannot himself be the seller, does not apply. An agent to procure goods, unless expressly restrained to a purchase on the credit of his principal, may purchase and pay for the goods, and charge the cost to his principal.

Another exception is, that the committee did not give notice of the books they had directed and determined to be used as class-books, and of the place, or places, where the books which they had procured might be obtained. In regard to the first part of this objection, it seems sufficient to say, that the statute does not expressly require notice. The act of this committee in this respect, like all other acts of similar bodies exercising a public trust, might be expected, without any express legal requisition, to be made known in the way proper to carry it into effect. Here it was made known to all those who were interested, through the schoolmasters. As to the other branch of the exception, that they did not comply with the requirement of the statute in giving notice of the place where the books might be obtained, it seems to us to be answered by the proof. It is shown that they were deposited with the masters and notice thereof given to the schools.

But the most material question is, whether the evidence offered by the plaintiffs from the town records, was sufficient, without the amendment, to prove that they were elected a school committee. After they had acted and been recognised as such through the two years, after their claim as such committee had been liquidated by the agents of the town, and an order drawn on the treasurer, and more especially after the assessors, another board of the servants and agents of the town, had received their return of the names of the parents and guardians to whose children and wards books had been delivered by the plaintiffs as such committee, and who had assessed the cost of the same on the persons liable, which assessment could be legal and valid only on the assumption that the plaintiffs were the school committee, and after the

20 *

town had assessed the full amount for their reimbursement, part of which had been received and the residue was in the process of collection, it would seem too late to go back, and deny that the plaintiffs were such committee. An individual could hardly he heard to make such a denial under such circumstances ; but perhaps a principle somewhat less strict should be applied to corporations, in respect to rules in the nature of estoppels. But we have not thought it necessary to give any opinion upon these questions, because we are satisfied, from an examination of the town record, as it stands without amendment, that it proves the election of the plaintiffs as the school committee.

It was the record of the year 1830 that was amended, with probably a view of showing that the plaintiffs were the committee of that year, and so to show that they were the persons designated in the order of May 20, 1830, as the inspecting school committee. But as the committee for the two years consisted of the same individuals, and as the record was in the same or nearly the same words, the same considerations apply to both.

The record is that of the doings of the town at its annual March meeting, held by law for the choice of annual town officers. The statute requires, § 6, that towns, at their annual meeting, shall choose a committee for each school district, to be called the " prudential committee " thereof. The same statute, § 5, requires each town, at the annual meeting thereof, to choose a school committee, consisting of three, five, or seven persons. The meeting in question being the annual meeting for the choice of town officers, was that at which the general school committee was required to be chosen. The record details the election of other annual town officers, and among others, a prudential school committee. It then contains this entry ; " Voted to choose an *examining committee of five.* Chose William H. White " &c., the plaintiffs. The question is, whether the record designates the plaintiffs with reasonable certainty, as the school committee required to be chosen by the 5th section of the act. It is to be remarked, that the statute provides for the election of two committees, charged with various and distinct duties in regard to schools, between

whom all the powers of towns are divided in relation to this subject ; that the statute directs that one shall be called the " prudential committee," but it does not direct what the other shall be called. It is described, not named. Then if the examining committee mentioned in the record, is brought within the description with reasonable certainty, it is sufficient. As the statute requires the appointment of two distinct committees, charged with the care of schools, with different powers, as mere matter of description using the words " school committee " would not be precisely accurate and specific. This difficulty was obviously felt by the person who made or suggested the amendment, whence the words " inspecting and examining " are added to the words " school committee," to make it specific, and bring it clearly within the statute.

There being no name given to this general committee, but only a description, the question recurs, does the record describe this committee with such reasonable certainty, and show that under that description they were chosen the school committee, pursuant to the 5th section of the statute ? To ascertain this, we must look at their powers and duties, as established by the same section of the statute, providing for their election. Two of these are put forth very prominently. It shall be their duty to require satisfactory evidence of the moral character of all instructers, and to satisfy themselves by *personal examination* or otherwise, of their capacity and qualifications. And afterwards, it shall furthermore be their duty, among other things, to visit such school for the purpose of making a *careful examination* thereof, and at *such examination* they shall enquire &c
The argument then stands thus ; the statute requires each town, at its annual meeting, to elect a committee of three, five or seven, to exercise various powers in relation to schools, and among other things, to examine the masters, and to examine the schools ; the town met to choose annual officers, and of course, such a committee ; they chose another committee, conformably to the requisitions of the statute ; no law requires the election of such a committe as an examining committee in terms, or any one, other than that for the schools, whose powers or duties would be so well designated by the word " examining ";
no other committee was chosen as the school committee re-

Hartwell
*v.*
Littleton.

quired to be chosen, by the 5th section of the statute ; the five plaintiffs were chosen an examining committee ; and therefore the Court are of opinion, that the record is sufficient to prove, that by the term " examining committee," was intended the school committee thus required, and that the plaintiffs were elected to that office, and thus became vested with the powers and subject to the duties, of such committee.

*Exceptions overruled and judgment of the Court of Common Pleas affirmed.*